UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
  HANDL CAPITAL 531, LLC,               :
                                                 :
                     Plaintiff,       :
                                                 :     **MEMORANDUM DECISION AND**
          -against-             :     **ORDER**
                                                  :
  NEW GENERATION HOLDINGS, LLC,      :     25-cv-6318 (BMC)
  *et al.*,                                         :
                                                 :
                     Defendants.      :
------------------------------------------------------------- X

**COGAN**, District Judge.

This is a diversity mortgage foreclosure action in which plaintiff, the mortgagee by assignment, seeks a default judgment against defendant, the mortgagor. Defendant acknowledges its failure to timely answer but points out that it was only 20 days late before it filed its motion to vacate the Clerk's entry of default and to oppose plaintiff's motion for a default judgment.

Plaintiff commenced this action on November 13, 2025. Defendant was served on December 2, 2025. The Clerk entered its default on January 2, 2026. Plaintiff filed its motion for a default judgment on January 8, 2026. Defendant attempted to file an answer on January 15, 2026, but the Court struck it because defendant had not moved to vacate the Clerk's entry of default. Defendant filed its motion to vacate its default on January 23, 2026.

The parties agree on the well-established test for vacating an entry of default or a default judgment. "Pursuant to Federal Rule of Civil Procedure 55(c), a district court may set aside the entry of a default 'for good cause,' and it may set aside a final default judgment under Rule 60(b)." Henry v. Oluwole, 108 F.4th 45, 52 (2d Cir. 2024). "In deciding whether to relieve a

party from a default or a default judgment, a district court considers three factors: '(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'" Id. (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Enron Oil, 10 F.3d at 96.

"The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Id. at 95. "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Henry, 108 F.4th at 51 (alteration in original) (quoting Enron Oil, 10 F.3d at 96). "[A]n understandable zeal for a tidy, reduced calendar of cases should not overcome a court's duty to do justice in the particular case." Enron Oil, 10 F.3d at 96.

## I.      Willfulness

In considering a motion to set aside a default judgment, "[w]illfulness 'is the most significant factor' but is not dispositive." Henry, 108 F.4th at 52 (quoting In re Orion HealthCorp, Inc., 95 F.4th 98, 104 n.4 (2d Cir. 2024)). The Second Circuit has interpreted "willfulness," in the context of a default, to mean conduct that is "more than merely negligent or careless." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998) (collecting cases). An attorney or litigant's conduct that is "egregious and [] not satisfactorily explained," is suggestive of

willfulness.  Id.  For example, the Second Circuit has found willful default when an attorney or litigant failed to respond to a motion for summary judgment for "unexplained" reasons, failed to comply with scheduling orders for "flimsy" reasons, or failed to answer the complaint after defendants had "purposely evaded service for months."  Id. at 738-39 (citing Com. Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243-44 (2d Cir. 1994); Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980); United States v. Cirami, 535 F.2d 736, 739 (2d Cir. 1976)).

Defendant has submitted an affidavit from its sole member, defendant Herve Thomas, which attempts to explain that the default was not willful.  Thomas offers that despite the mortgaged property being held by an LLC, the property is actually the family home in which his father still resides.  He avers that "at some point" he had to refinance the property, and the lender wanted the property held by a limited liability company, so he did that (presumably as part of granting the mortgage).  Thomas lives in California, and his 84 year old father with impaired vision resides on the property and did not appreciate the significance when the New York Secretary of State mailed the summons and complaint to the property address.  Thomas did not see the pleadings until he visited his father in January 2026.

Thomas contacted his current attorney of record, Michael Kennedy Karlson, who had represented him in "previous State Court actions", but Karlson, at that point, declined the representation.  Thomas "did not know" any other attorneys and therefore took no further action to retain an attorney for the LLC. Thomas tried unsuccessfully to contact plaintiff.  He was unable to sign up for a PACER account. He thought he would be personally served with the summons and complaint as the sole member of the LLC and did not realize that the Secretary of State, as agent for the LLC, would accept service and send the pleadings to the record address

3

(where Thomas's father was living).  Thomas tried to call in for the Initial Status Conference but gave up when there was no one else on the line.[1]

Under these circumstances, although the question is close, this Court cannot find that the default was willful.  Negligent, yes.  Whatever reason his lender had for requiring transfer of the property to a limited liability company, Thomas became a businessman at that point, and he had to pay attention to the business affairs of the LLC.  Thomas's affidavit discloses his awareness of the fact that an LLC might not be able to appear *pro se* in federal court, and he should have done something about it.  Certainly, he knew that mortgage payments were being missed, and he should not have waited for the eve of default judgment to start taking the matter seriously.

The Court cannot accept defendant's notion that just because Karlson initially declined to represent the LLC, Thomas could not hire another lawyer to represent the LLC.  One can barely shake a tree in New York City without finding a lawyer in it.  The fact that Karlson had represented him previously in numerous State Court matters shows that Thomas has some experience in litigation, and that experience should have made him attentive to this action.

Nevertheless, the fact that Thomas tried to contact plaintiff and attend the initial status conference shows he was at least trying to buy more time (or trying to arrange a meeting between the lawyers) and not entirely ignoring this action.  Considering the short period between the entry of default, the motion for a default judgment, and defendant's late appearance, it does not appear that the default was more than negligent.

## II.    Meritorious Defense

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively,

---

[1] The status conference was adjourned without date in light of defendant's default.

but he must present evidence of facts that, if proven at trial, would constitute a complete defense." State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 167 (2d Cir. 2004) (quoting McNulty, 137 F.3d at 740). "Judging the merit of a defense for the purposes of a motion to vacate a default judgment pursuant to a more rigorous standard would be inappropriate." Id. at 167-68.

Although the Second Circuit has held that "willfulness" is the most important matter in determining whether to vacate a default, see Henry, 108 F.4th at 52, this Court has expressed the view that the presence of a meritorious defense is often at least equally or more important. See Alston v. City of New York, No. 22-cv-5395, 2024 WL 4100175, at *4 (E.D.N.Y. Sept. 5, 2024) (citing New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005)). That is because if a defendant lacks a colorable defense, the case is going to wind up right back where it was when it came before the Court on the motion for a default judgment, with the concomitant waste of resources that that will have occurred between vacating the default and determining a motion for summary judgment. "[T]he federal courts should not become a haven for the dilatory debtor." Marine Midland Bank v. Smith, 482 F. Supp. 1279, 1291 (S.D.N.Y. 1979) (internal quotation and citation omitted).

That appears to be the case here. First, defendant does not contest that it is in payment default on the mortgage, and offers no plan to cure that default. This means that defendant's ultimate goal is to either delay the foreclosure so it can stay in possession of the property longer, or to avoid its mortgage obligation entirely by claiming some technical deficiency that either invalidates the mortgage or prevents plaintiff from foreclosing. But defendant's means for achieving those goals are specious.

What defendant has done is copy a bunch of boilerplate foreclosure defenses from a formbook, throw in some lengthy quotations from cases accepting those defenses based on facts having nothing to do with this case, and then refer to the hodgepodge as a meritorious defense (or defenses). But that cannot be good enough. If it was, any defendant in default could simply allege a number of conclusory affirmative defenses and thereby meet the standard for asserting a meritorious defense. The bar for raising a meritorious defense in opposition to a default judgment motion is low, but it cannot be that low.

Defendant has not referred to a single fact that would support its laundry list of formulaic affirmative defenses. First, it claims that plaintiff lacks standing to foreclose. But we are not told why defendant thinks plaintiff lacks standing. The trail of documents before the Court clearly shows the original note, mortgage and an allonge transferring the note to plaintiff. Plaintiff had submitted evidence that well before it commenced this action, it had obtained possession of the wet-ink note and it still has it.

Defendant contends that the affidavit and/or documents supporting these facts are "hearsay," seeming to suggest that plaintiff needed an authentication affidavit from its assignor. But if plaintiff received those records as part of its assignment of the mortgage or in preparation for this action, as it avers it did, they are plainly business records, properly authenticated as such, and well within the business records exception to the rule against hearsay. Defendant has not pointed to any reason to question plaintiff's standing.

Next, because plaintiff is a foreign limited liability company, defendant contends that there is a defense that the action should be dismissed or stayed under N.Y. LLCL § 808(a). That statute requires a foreign LLC that is "doing business" in New York to obtain authorization from the Secretary of State before it may bring suit. The statute, however, "acts as a bar to []

maintenance of a suit" only if the "plaintiff is 'doing business' within this state without authorization."  See 1S REO Opportunity 1, LLC v. Harlem Premier Residence, LLC, 234 A.D.3d 401, 402, 222 N.Y.S.3d 464, 465 (1st Dep't 2025); see also Commodity Ocean Transp. Corp. of N.Y. v. Royce, 221 A.D.2d 406, 407, 633 N.Y.S.2d 541, 542 (2nd Dep't 1995) (applying N.Y. BCL § 1312(a), the corporation counterpart to N.Y. LLCL § 808(a)).

Bringing a suit in New York does not constitute "doing business" in New York. N.Y. LLCL § 803(a)(1) (Expressly exempting "maintaining or defending any action or proceeding, whether judicial . . . or otherwise" from the definition of "doing business.").  Here, defendant has not offered a single fact even hinting that plaintiff is engaging in a regular course of business in New York – not an office in New York, not a solicitation of business from New Yorkers, nor anything else that might constitute a regular and continuous course of business.  To the contrary, plaintiff has submitted proof that the loan at issue in this case is the only loan owned by plaintiff.

Defendant's next gambit is to dispute the amount of the delinquency.  To do that, defendant offers nothing more than a conclusory statement that plaintiff has calculated the arrears incorrectly. It has produced no evidence of payments made which would challenge the payment calculation that plaintiff has submitted.  More importantly, a dispute over the calculation of arrears is not a defense to a mortgage foreclosure action.  The precise calculation is worked out by the foreclosure referee, subject to an objection to be made to the court, once the foreclosure sale has occurred.  See Crest/Good Mfg., Inc. v. Baumann, 160 A.D.2d 831, 831-32 554 N.Y.S.2d 264, 265 (2nd Dep't 1990) ("A dispute as to the exact amount owed by the mortgagor to the mortgagee . . . does not preclude the issuance of summary judgment directing the sale of the mortgaged property.").

The next defense offered is that the mortgage is infirm because plaintiff's predecessor, the original mortgagee, failed to pay off a prior mortgage – the "HFC Mortgage" – as the new mortgage required.  Defendant calls this a "failure of consideration."  It is enough to say that plaintiff has produced record evidence that the HFC mortgage was, in fact, paid off.

The other formbook defenses are equally frivolous.  Rote invocation of the "parole evidence rule" or an assertion that the complaint "fails to state a claim" or that plaintiff's claim violates the "statute of frauds", or that plaintiff "failed to mitigate damages" with not a single fact offered to back them up, carry no weight on this motion.  Defendant further objects that the description of the property refers to "Farragut Goad" instead of "Farragut Road" which renders the mortgage invalid; this is a technical error obviously subject to reformation, if that is even necessary.

## III.    Prejudice

As is usually the case, the measurement of prejudice weighs in favor of vacating the default.  This is because to establish prejudice, a court must look beyond mere delay.  Henry, 108 F.4th at 52 (citing Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)).  "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion."  Id. at 52-53.  Plaintiff is in the driver's seat in this case, and although any delay may cost it money, the delay alone is not sufficient to find prejudice.  The Court will seek to minimize any delay through a narrowly tailored and expedited discovery schedule.

## IV.    Application

Despite this Court's skepticism of defendant's proffered meritorious defenses, considering that the delay here was only 20 days; that the default was negligent rather than

willful; that the case had progressed only to entry of default and not default judgment; and that plaintiff has not suffered cognizable prejudice, the Court will grant defendant's motion to vacate the entry of default. However, that ruling will be subject to the condition set forth below.

It is well established that a court can impose conditions on a defendant in vacating a default. See Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 515 (2d Cir. 2001) ("In determining whether to exercise its discretion to set aside a default . . . a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party."). Most commonly, courts will require a defendant to reimburse the plaintiff for the attorneys' fees that the plaintiff has incurred in seeking a default. See, e.g., Richardson v. Nassau Cnty., 184 F.R.D. 497, 503 (E.D.N.Y. 1999); cf. United States Fidelity and Guaranty Co. v. Petroleo Brasileiro S.A., 220 F.R.D. 404, 407 (S.D.N.Y. 2004) (conditioning the denial of a motion for a default judgment on payment of costs and attorneys' fees in bringing the motion).

An award of attorneys' fees and costs upon vacating an entry of default does not require a finding of willfulness on the part of the defaulting party. See RLS Assoc., LLC v. The United Bank of Kuwait PLC, No. 01-cv-1290, 2002 WL 122927, at *8 (S.D.N.Y. Jan. 29, 2002). Rather, the "power to impose a reasonable condition on the vacatur" allows the Court to balance any "undue prejudice" to the movant against this Circuit's "preference for resolving disputes on the merits." Powerserve Int'l, 239 F.3d at 514-15.

Plaintiff should not have to pay attorneys' fees for defendant's neglect of this case. Especially given the weakness of the defenses, plaintiff should be placed in the same position it would have been in had defendant not defaulted. Accordingly, as a condition to vacating the default, defendant must reimburse plaintiff the reasonable amount of attorneys' fees and costs incurred in moving for a default judgment and opposing defendant's motion to vacate. If the

9

parties cannot stipulate to that amount within seven days, plaintiff may move the Court to fix the amount pursuant to Federal Rule of Civil Procedure 54(d).

## CONCLUSION

Plaintiff's motion for a default judgment is denied, and defendant's motion to vacate the Clerk's entry of default is granted, subject to the condition set forth above.

**SO ORDERED.**

*Brian M. Cogan*

U.S.D.J.

Dated: Brooklyn, New York
   February 16, 2026

10